# Third District Court of Appeal

## State of Florida

Opinion filed March 23, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-1501
Lower Tribunal No. 03-16412
_____


**Verena Von Mitschke-Collande, et al.,**
Appellants,

vs.

**Skipworth Properties Limited, etc., et al.,**
Appellees.


An Appeal from the Circuit Court for Miami-Dade County, Daryl E. Trawick and Thomas J. Rebull, Judges.

Kozyak Tropin & Throckmorton, LLP, and Charles W. Throckmorton and Latasha G. Hines, for appellants.

Baker & McKenzie LLP and Lee Stapleton and Jodi A. Pandolfi, for appellee, SwissPartners Investment Network, Ltd.


Before SUAREZ, C.J., and WELLS and SHEPHERD, JJ.

SHEPHERD, J.

This appeal is a sequel to a series of cases that have come before this Court during a two-decade effort by the heirs of Siegfried Otto, a successful German businessman, to recover over $90,000,000 in funds misappropriated by his former son-in-law, Thomas Kramer. The facts underlying the litigation are set forth in Otto's Heirs v. Kramer, 797 So. 2d 594 (Fla. 3d DCA 2001).

The present iteration of that effort emanates from the efforts of the heirs, Verena Von Mitschke-Collande and Claudia Miller-Otto, to realize on a luxury home on Star Island in Miami Beach, which Kramer transferred to Skipworth Properties, Limited, an Isle of Man trust in which he is the sole beneficiary, in July 2001, shortly after the District Court of Canton of Zurich (equivalent to a trial court) entered judgment against him for the full amount of the misappropriated funds.[1] Ten days later, Skipworth granted Kramer a license to live on the property rent-free and, soon after that, granted SwissPartners Investment Network, Ltd., a $12,000,000 mortgage on the property. The heirs seek to avoid both the conveyances to Skipworth and SwissPartners as fraudulent transfers, impose a constructive trust on the property, obtain a declaration that the rights of Kramer, Skipworth and SwissPartners are subordinate to the rights of the heirs, and foreclose certain "Reimbursement Mortgages" that Kramer, Skipworth and

---

[1] The Swiss judgment, which by then had grown to $108,315,766 with interest, was domesticated in Florida in April 2007. We affirmed the domestication of the judgment the next year. See Kramer v. Von Mitscheke-Collande, 5 So. 3d 689 (Fla. 3d DCA 2008).

SwissPartners granted to the heirs for the privilege of paying the property taxes on the property while they march toward their goal.

The present dust-up arises from the fact that, while naming SwissPartners as a defendant when the instant litigation was filed in 2003, the heirs did not serve SwissPartners with the initial complaint. The reason advanced by the heirs in their Initial Brief for not doing so, is that "all of the Florida actions were effectively, albeit informally, abated for a period of years because of a complex web of litigation and appeals in Switzerland that potentially threatened the finality of the Swiss judgment upon which all of the heirs' Florida litigation was ultimately based." In 2013, the heirs hired new counsel, who, after deposing Kramer and obtaining leave to file a Second Amended and Supplemented Complaint, finally served SwissPartners. SwissPartners predictably moved to dismiss the Second Amended and Supplemented Complaint on the ground that the heirs failed to serve SwissPartners within 120 days from the date of filing the initial complaint, as required by Florida Rule of Civil Procedure 1.070(j). The hearing on the motion centered on an interpretation of the rule. SwissPartners argued that the heirs were required to establish "good cause" or "excusable neglect" in order to overcome the 120-day requirement for service. The heirs, on the other hand, argued that even if they had not acted diligently and failed to demonstrate either good cause or excusable neglect, the court still had the discretion to allow service, and its

3

discretion should normally be exercised in favor of extending the time for service of process where, as here, the statute of limitations will have run against SwissPartners. The trial court accepted the narrower construction of the rule advanced by SwissPartners and dismissed the Second Amended and Supplemented Complaint insofar as it pertains to SwissPartners, with prejudice. We conclude the trial court misapplied the rule, and reverse and remand the case for further proceedings.

Analysis

Rule 1.070(j) provides, in pertinent part:

> If service of the initial process and initial pleading is not made upon a defendant within 120 days after filing of the initial pleading directed to that defendant the court, on its own initiative after notice or on motion, shall direct that service be effected within a specified time or shall dismiss the action **without prejudice** or drop that defendant as a party; provided that if the plaintiff shows good cause or excusable neglect for the failure, the court shall extend the time for service for an appropriate period.

(emphasis added).

The heirs do not dispute that the initial pleading directed to SwissPartners was the initial complaint filed in 2003, and that this pleading was not served on SwissPartners within 120 days of its filing. In such a circumstance, argue the heirs, the trial court has three options: (1) direct that service be effected within a specific time; (2) dismiss the action without prejudice; or (3) drop that party as a defendant in the case. The heirs further contend that the last sentence of subsection

4

(j) provides a distinct, separate safe harbor for a litigant who can meet its requirements: a demonstration of good cause or excusable neglect for not serving the defendant within the required 120-day period. In such a case, a late-achieved service of process <u>must</u> be allowed. The heirs' parsing of the rule is grammatically correct. If, as SwissPartners argues and the trial court accepted, the heirs were required to establish good cause, excusable neglect or be barred from proceeding against SwissPartners, the first three options stated in the rule would be a nullity.

We most recently explained the operation of the rule in <u>Fernandez v. Cohn</u>, 54 So. 3d 1040 (Fla. 3d DCA 2011). There, Jorge Luis Fernandez, the plaintiff in an automobile accident case, filed his negligence action two weeks before the statute of limitations had run. After an initial unsuccessful attempt to serve Cohn at the address listed in the accident report (Cohn no longer purportedly lived there), Fernandez hired a licensed private investigator to ascertain Cohn's whereabouts. After multiple efforts by the private investigator to locate Cohn failed, Fernandez sought leave to amend his complaint so he could effectuate service on the Secretary of State pursuant to section 48.171 of the Florida Statutes. The motion was granted and Fernandez served the Secretary of State. Within two weeks of service on the Secretary of State, Cohn moved to quash service of process and dismiss the complaint for failure to serve it upon him within 120 days of filing. Claiming he had not concealed his whereabouts and easily could have been located

5

via his drivers' license, which listed his current address, Cohn demanded dismissal on the ground that Fernandez had failed to demonstrate good cause or excusable neglect that would justify extending the 120-day time limit on service imposed by Rule 1.070(j). The trial court agreed and, because the statute of limitations had by then run, granted the motion with prejudice.

We reversed the decision of the trial court stating:

> [T]his rule provides a trial court with three options when service has not been perfected within 120 days of the filing of the complaint. The options are: "(1) direct that service be effected within a specified time; (2) dismiss the action without prejudice; or (3) drop [the unserved] defendant as a party." Chaffin v. Jacobson, 793 So.2d 102, 103–104 (Fla. 2d DCA 2001). Where good cause or excusable neglect for failure to make timely service has been demonstrated, a trial court must extend the time for service "and has no discretion to do otherwise." Id. at 104. Where no good cause or excusable neglect exists, the trial court is left to exercise its discretion as to which of the three options to select, except where the statute of limitations has run. Where the statute of limitations has run, discretion should normally be exercised in favor of extending the time for service of process.

54 So.3d at 1042. The Court found that the record reflected good cause for an extension of time, but stated that:

> Even if Fernandez had not acted diligently and had failed to demonstrate either good cause or excusable neglect, he still should have been afforded an opportunity to serve Cohn because the statute of limitations on Fernandez' negligence claim has now run. This is so, as has already been explained, because Rule 1.070(j) is a rule of administrative convenience which should not trump the preference for trials on the merits.

6

Id. at 1043; accord, Premier Capital, LLC v. Davalle, 994 So. 2d 360, 361 (Fla. 3d DCA 2008) (reversing dismissal order where trial court "failed to consider that it was permitted to grant an extension of time for service even without a showing of good cause").

The trial court in this case overlooked this Court's directives in Fernandez and Premier Capital. It expressly accepted SwissPartners' legally incorrect argument that the heirs were required to establish good cause or excusable neglect to avoid dismissal of their claims against SwissPartners. The Court ruled: "In order for the plaintiff to be able to proceed, the Court agrees [with SwissPartners] that first the plaintiff would have to establish good cause for their failure to have served SwissPartners, and in showing good cause, part of the analysis would be excusable neglect on their part." The trial court also gave no consideration to its own determination that the statute of limitations had run on the heirs' claims against SwissPartners, other than to cite this as the basis for dismissing the claims with prejudice.

For both of these reasons, we conclude the trial court committed legal error and, consequently, an abuse of discretion. The order dismissing this case with prejudice is therefore reversed, with directions to the trial court to consider that it was permitted to grant an extension of time even without a showing of good cause.

Reversed and remanded with directions.